**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JASON ANTHONY ORGERON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-0942** |
| **WARDEN KEITH TURNER, ET AL.** | **SECTION "D"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* **28 U.S.C. § 2254(e)(2)**.[1]

## I.     Factual and Procedural Background

Petitioner Jason Anthony Orgeron ("Orgeron") is a convicted inmate incarcerated in Elayn Hunt Correction Center in St. Gabriel, Louisiana.[2] On December 1, 2017, Orgeron was charged by Bill of Information with illegal possession of stolen firearms and possession of a firearm or carrying a concealed weapon by a convicted felon.[3] Orgeron entered a plea of not guilty to the charges.[4]

The record reflects that agents obtained a warrant to search Orgeron's residence for an

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.
[2] ECF No. 3 at 1.
[3] ECF No. 10 at 2-3, Bill of Information, 12/1/17. The State filed a copy of Orgeron's state court records at ECF Nos. 10, 10-1.
[4] ECF No. 10-1 at 435, Arraignment Minutes, 12/4/17.

AR-15 and a Ruger pistol based on information obtained while investigating complaints of unauthorized use of a movable and a burglary.[5] On October 30, 2017, agents of the Lafourche Parish Drug Task Force and the Lafourche Parish Interagency Crisis Management Unit (SWAT) went to Orgeron's residence to execute the search warrant. Agent Zachary Sciortino and Agent Martin Gutierrez parked their unmarked vehicle up the street from the residence and conducted surveillance prior to execution of the warrant. Meanwhile, snipers on the ground surrounded the residence and assisted with the surveillance. The residence was considered "locked down."

After several hours, agents observed a vehicle pull up to the residence and notified SWAT to proceed with the execution of the warrant. Agents attempted to make contact with Orgeron through the use of a loudspeaker on a fully marked squad car. SWAT negotiator's attempts to contact Orgeron via cell phone were unsuccessful. Orgeron's girlfriend, Ashley Serigny, a/k/a Ashley Lovell, exited the residence and entered Sergeant Adam Dufrene's police unit. After Serigny voluntarily provided information, officers again attempted to make contact with Orgeron but were unsuccessful. After deploying CS gas, the officers entered Orgeron's residence. Orgeron exited the residence through the attic due to the gas and was arrested.

The agents then proceeded to search the residence pursuant to the search warrant. Agents recovered a Ruger nine-millimeter pistol, which had previously been reported as stolen, and ammunition wrapped in a towel in a closed bread box in the kitchen. A red truck was parked in the driveway of the residence. Agents saw two guns in plain view of the back seat of the truck. Agents determined that the vehicle was registered to Juan Barrios but had been transferred to Byron Oglesby.

---

[5] The facts were taken from the Louisiana First Circuit opinion on direct appeal. *State v. Orgeron*, 2021 WL 6065818, at *1-2 (La. App. 1st Cir. Dec. 22, 2021); ECF No. 10 at 684-86.

Agents obtained a search warrant for the truck and towed it to a secured facility for purposes of executing the search warrant. Two shotguns and three rifles that were also reported stolen were recovered from the backseat of the truck. All the recovered firearms were released to the owner hours later.

Orgeron was tried before a jury from April 22 through 24, 2019, and was found guilty as charged.[6] Orgeron filed a motion for post-verdict judgment of acquittal, which the court granted as to count one, but denied as to count two.[7] On May 31, 2019, the court sentenced Orgeron to seventeen years at hard labor to be served without the benefit of probation, parole, or suspension of sentence.[8] The court denied Orgeron's motion to reconsider sentence.[9]

On direct appeal, Orgeron's appointed counsel argued that the evidence was insufficient to support the guilty verdict on count two, possession of a firearm or carrying a concealed weapon by a convicted felon.[10] On December 22, 2021, the Louisiana First Circuit affirmed the conviction finding the claim meritless.[11] Orgeron did not seek review from the Louisiana Supreme Court.

On March 29, 2021, Orgeron filed a motion for new trial based on juror misconduct.[12] On December 23, 2021, Orgeron submitted an application for post-conviction relief in the state trial court asserting juror misconduct, violation of due process based on the State's failure to preserve evidence, and ineffective assistance of counsel.[13] On February 8, 2024, after an evidentiary

---

[6] ECF No. 10 at 114-15, Verdict as to Count One, 4/24/19; *id.* at 116-17, Verdict as to Count Two, 4/24/19.
[7] ECF No. 10-1 at 465, Hearing Minutes, 5/28/19; *id.* at 133-40, Motion for Post Judgment Verdict of Acquittal, 5/10/19; *id.* at 1094-1109, Hearing Transcript, 5/28/19.
[8] ECF No. 10-1 at 466, Sentencing Minutes, 5/31/19; *id.* at 161, Uniform Sentencing Commitment Order, 5/31/19; *id.* at 1110-22, Sentencing Transcript, 5/31/19.
[9] ECF No. 10-1 at 468, Hearing Minutes, 9/26/19; *id.* at 170-71, Motion to Reconsider Sentence, 6/28/19; *id.* at 187-88, Memorandum in Support of Motion to Reconsider Sentence, 9/23/19; *id.* at 1123-31, Hearing Transcript, 9/26/19.
[10] *See Orgeron,* 2021 WL 6065818, at *2; ECF No. 10 at 686.
[11] *Orgeron,* 2021 WL 6065818. at *4-6; ECF No. 10 at 686-93.
[12] ECF No. 10 at 305-25, 331, Motion for New Trial, 4/1/21 (postmarked 3/29/21).
[13] *Id.* at 359-676, Application for Post-Conviction Relief, 2/8/22 (dated 12/23/21).

hearing, the state trial court denied Orgeron's motion for new trial as well as his application for post-conviction relief.[14]

On July 15, 2024, the Louisiana First Circuit denied Orgeron's related writ application without assigning reasons.[15] On November 14, 2024, the Louisiana Supreme Court denied Orgeron's related writ application finding he failed to show that he was denied the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1994), and, as to his remaining claims, he failed to satisfy his post-conviction burden of proof under La. Code Crim. P. art 930.2.[16]

## II.    <u>Federal Habeas Petition</u>

On May 22, 2025, after he corrected certain deficiencies, the Clerk of Court filed Orgeron's federal petition for habeas corpus relief in which he asserted the following grounds for relief:[17] (1) his right to due process was violated when Sergeant Champagne returned a seized firearm to the rightful owner before scientific testing or fingerprinting could be conducted in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988); (2) ineffective assistance of counsel in failing to raise the issue prior to or at trial; and (3) ineffective assistance of counsel in failing to properly impeach the State's primary witness, Ashley Lovell, with prior inconsistent statements.[18]

On July 17, 2025, the State filed a response in opposition conceding that Orgeron's petition is timely and his claims are exhausted.[19] However, the State argues that his claims are meritless.[20] The State asserts that Orgeron fails to show bad faith on the part of police for failing to preserve

---

[14] *Id*. at 862-63, Judgment, 2/8/24; *id.* at 1287-1355, Hearing Transcript, 2/8/24.
[15] ECF No. 10-1 at 1705, La. App. 1st Cir. Order, 2024-KW-0309, 7/15/24.
[16] *State v. Orgeron*, 395 So. 3d 1166 (La. 2024); ECF No. 10-1 at 1529; *id.* at 1683.
[17] ECF No. 3.
[18] *Id.* at 26-29.
[19] ECF No. 9 at 5-6.
[20] *Id.* at 7-11.

evidence and that the state court's decision was consistent with clearly establish law.[21] The State further asserts that defense counsel explored the failure to preserve evidence on cross-examination.[22] Finally, the State asserts that the cross-examination of Lovell was a matter of trial strategy and that Orgeron fails to meet the *Strickland* standard.[23] Orgeron filed a reply brief to the State's opposition in which he reiterates his arguments as outlined in his petition.[24]

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to Orgeron's petition, which is deemed filed in this Court under the mailbox rule on May 5, 2025.[26] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As previously noted, the State concedes that Orgeron's claims are timely and exhausted. Thus, the Court will address the merits of Orgeron's claims.

---

[21] *Id.* at 8-9.

[22] *Id.*

[23] *Id.* at 9-11.

[24] ECF No. 13.

[25] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Orgeron signed his pleadings on May 5, 2025, which is the earliest date he could have given his petition to prison officials for mailing. ECF No. 1 at 15.

IV.    **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" attaches to state court findings of fact and the "clear and convincing evidence" burden is placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established

at the time of the state-court decision.'" *Id.* at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 427; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.     Discussion

### A.   Failure to Preserve Evidence (Claim 1)

Orgeron claims his due process rights were violated when law enforcement failed to preserve potentially useful evidence. He claims that Sergeant Champagne failed to preserve the stolen Ruger handgun that was recovered from the breadbox in Orgeron's residence. Instead, Champagne returned the handgun to its rightful owner before any fingerprint or DNA testing could be conducted.

The State asserts that there is no evidence of bad faith on the part of law enforcement and that the state court's decision was consistent with *Arizona v. Youngblood*.[27] Orgeron also raised this claim in his application for post-conviction relief.[28] Ultimately, the Louisiana Supreme Court found that he failed to satisfy his post-conviction burden of proof under La. Code Crim. P. art 930.2.[29]

The State violates a defendant's right to due process if: (1) it destroys evidence whose exculpatory significance is "apparent before" destruction; and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). On the other hand, in order to establish a Fourteenth Amendment due process

---

[27] ECF No. 9 at 8-9.
[28]  ECF No. 10 at 363, 371-72, Application for Post-Conviction Relief, 2/8/22 (dated 12/23/21).
[29] *Orgeron*, 395 So. 3d at 1166; ECF No. 10-1 at 1529; *id.* at 1683.

violation based on the failure to preserve evidence where the exculpatory value of the evidence is undetermined but may be "potentially useful" to the defense, a defendant must show that law enforcement acted in bad faith in destroying the evidence. *Youngblood*, 488 U.S. at 58. In short, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *United States v. Wadi*, 153 F.4th 465, 478 (5th Cir. 2025) (citation omitted).

Here, Orgeron contends that Champagne should not have returned the firearm to its rightful owner before subjecting the gun to testing. He claims that the results of the testing and whether the testing revealed fingerprints or DNA of someone other than Orgeron, or no evidence at all, could have aided in his defense that he did not possess the firearm.

However, given that the State did not test the firearm, it could not have withheld exculpatory evidence. *United States v. Hensley*, No. 22-20290, 2023 WL 4238477, at *3 (E.D. Mich. June 28, 2023) ("By failing to preserve and test the gun, the Government did not fail to disclose evidence that it possessed. Rather, it prevented Hensley from obtaining uncontaminated DNA and fingerprint evidence from the gun. However, the Government had no duty to obtain any DNA or fingerprint evidence for Hensley when the Government did not itself possess such evidence.") (citation omitted), *aff'd*, No. 23-1754, 2024 WL 5414804 (6th Cir. Sept. 13, 2024).

While it is possible that testing could have supported Orgeron's defense, testing may also have resulted in finding Orgeron's fingerprints or DNA on the firearm or may have been inconclusive. Further, assuming that Orgeron's fingerprints or DNA were not found on the firearm, that result would not conclusively prove his defense that he did not possess the firearm. Regardless,

the assertion that test results would have supported his defense is mere speculation, and therefore, Orgeron would only be entitled to relief for the failure to preserve potentially exculpatory evidence if the police acted in bad faith. *Id.* at \*4; *Morgan v. Palmer*, No. 11-10265, 2012 WL 1806154, at \*5 (E.D. Mich. May 17, 2012) (evidence was potentially exculpatory where police failed to preserve firearm for fingerprint testing and, thus, petitioner had to establish bad faith in order to be entitled to relief).

When evaluating whether the police acted in bad faith, there is no evidence that the State failed to preserve the firearm for the purpose of depriving Orgeron of potentially useful evidence, nor is there any evidence that Sergeant Champagne recognized that the firearm may have been potentially exculpatory. Rather, Sergeant Champagne testified that, after taking photographs of the firearms, all the firearms were released back to the owner once proof of ownership was established, as was typically done by the Sheriff's Office.[30] When asked why the weapons were released to the owner, Champagne explained, "So it's his firearms, he's not deprived of them any longer than what he would already have been deprived of them."[31] Champagne admitted that no fingerprint or DNA testing was conducted on the firearm and, therefore, it could not be determined if Orgeron or someone else had handled the weapon.[32]  However, he testified, "most of the time people utilize gloves. So, if they're wearing gloves you won't get DNA or fingerprints as well so that could have been a possibility as well."[33]

---

[30] ECF No. 10-1 at 278-80, Trial Transcript, 4/23/19
[31] *Id.* at 278.
[32] *Id.* at 292.
[33] *Id.*

While Champagne's logic for returning the firearm to the lawful owner without first conducting scientific or fingerprint testing may not be the most compelling reason, his failure to preserve the firearm appears to be negligent or utilizing bad judgment at most. A finding of mere negligence, however, does not constitute evidence of bad faith. *Youngblood*, 488 U.S. at 58 (finding the failure to refrigerate clothing or test semen samples was at worst negligence and not demonstrative of bad faith); *accord United States v. Diaz*, 844 F. App'x 734, 735 (5th Cir. 2021) (no evidence of bad faith where prosecution negligently lost or destroyed an audio recording of a discussion between appellant and his co-conspirator that allegedly reflected that Diaz did not knowingly participate in the charged conspiracy); *Hensley*, 2023 WL 4238477, at *4 (failure to preserve gun was not done in bad faith where gun would not have been tested under state laboratory policy and nothing suggested officer knew the gun had exculpatory value when he grabbed it); *Morgan*, 2012 WL 1806154, at * 4 ("The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence.").

For these reasons, Orgeron has not shown that the state courts' decision was contrary to or an unreasonable application of clearly established Supreme Court law under *Arizona v. Youngblood*, 488 U.S. 51 (1988). Therefore, he is not entitled to relief as to this claim.

### B. Ineffective Assistance of Counsel (Claims 2 and 3)

Orgeron claims his counsel was ineffective in failing to raise the issue of failing to preserve evidence and for failing to impeach Lovell by her prior inconsistent statement. The State responds that Orgeron fails to meet the *Strickland* standard. Orgeron raised these claims in his application

11

for post-conviction relief.[34] The Louisiana Supreme Court ultimately found that Orgeron failed to prove he received ineffective assistance of counsel under *Strickland*.[35]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of federal law as determined by the Supreme Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*,

---

[34] ECF No. 10 at 363-64, 373-81, Application for Post-Conviction Relief, 2/8/22 (dated 12/23/21).
[35] *State v. Orgeron*, 395 So. 3d 1166 (La. 2024); ECF No. 10-1 at 1529; *id.* at 1683.

466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland,* 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to

13

support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

### a. **Failure to Raise the *Youngblood* Issue (Claim 2)**

First, Orgeron claims his trial counsel was ineffective for failing to raise the issue regarding the failure to preserve evidence at or before the trial in this matter. As explained *supra*, Orgeron's right to due process was not violated under *Youngblood*. Therefore, any objection made or motion

14

filed by Orgeron's trial counsel claiming the failure to preserve potentially exculpatory evidence would have been meritless.

It is clearly established law that counsel is not ineffective by failing to raise a meritless issue. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark*, 19 F.3d at 966); *accord United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Counsel is not required to make futile motions or objections.").

Given that Oregeron has failed to meet his burden to prove that the state courts unreasonably applied *Strickland* in its denial of this claim, the AEDPA's deferential standards of review require that the claim likewise be denied in this federal proceeding. Thus, Orgeron is not entitled to relief on his claim that trial counsel was ineffective for failing to raise the issue regarding the failure to preserve evidence.

### b.   Failure to Property Cross-Examine Lovell (Claim 3)

Orgeron also claims his trial counsel was ineffective for failing to properly cross-examine Lovell about a prior inconsistent statement she made during a three-way telephone conversation between her, Orgeron, and his mother. During that conversation, Lovell allegedly denied telling officers that there was a weapon in the house, claimed she did not know what they were talking about, and claimed she did not say anything to officers about a gun. Orgeron faults his trial counsel for both failing to ask Lovell about the telephone conversation and failing to use the recording of the telephone conversation to impeach Lovell on cross-examination.

The State responds that trial counsel was not ineffective as cross-examination is a matter of strategy and that playing the audio of the phone conversation could have backfired as the jurors may have concluded that Orgeron was threatening the witness. As such, the State concludes that Orgeron fails to meet the *Strickland* standard.

As the State correctly asserts, the method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude. *See United States v. Octave*, No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011). The federal courts have made clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. April 27, 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-02224, 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. Aug. 9, 2006). The United

States Supreme Court has cautioned courts not to second guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

Any second-guessing of trial counsel's performance on the cross-examination of Lovell is inappropriate here. The record reflects defense counsel extensively cross-examined Lovell in an attempt to undermine her credibility.[36] First, he questioned Lovell about her prior convictions.[37] Next, trial counsel specifically questioned Lovell about whether she told Orgeron that she did not tell the police about the guns. While Lovell initially testified that she did not recall what she told Orgeron, Lovell admitted that, had Orgeron asked her what she told the police, she "most definitely" would have lied to him.[38] Further, in closing argument, trial counsel argued that Lovell was not credible as she was a convicted felon who was incarcerated at the time of trial and had reached a plea agreement with the State.[39] He also argued that, on the date of the search, Lovell gave law enforcement a false name so that they would not discover outstanding warrants for her arrest, and that she was dishonest when she told the police that the gun belonged to Orgeron rather than to her.[40]

---

[36] ECF No. 10-1 at 301-04, 306-07, 315, 317-19, 321, Trial Transcript, 4/23/19.
[37] *Id.* at 302-03.
[38] *Id.* at 315, 317-18, 321.
[39] ECF No. 10-1 at 386-88, 394, Trial Transcript, 4/24/19.
[40] *Id.* at 387-88, 384.

While trial counsel did not introduce the audio of the telephone call, Orgeron has not shown that counsel was ineffective in cross-examining Lovell. It is clear from the record that defense counsel attempted to discredit the State's case through cross-examination of the prosecution's witnesses, including Lovell, as well as through the presentation of testimony from defense witnesses, including Orgeron and his mother, in an effort to raise doubt about the reliability of the testimony and to support of Orgeron's claim of actual innocence. The testimony was presented to the jury, which as the trier of fact, weighed and considered the testimony. The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted).

Thus, Orgeron fails to establish that the denial of relief by the state courts on this ground was contrary to or an unreasonable application of *Strickland*. As such, he is not entitled to relief on his claim that trial counsel was ineffective for failing to effectively cross-examine Lovell.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jason Anthony Orgeron's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 23rd  day of March, 2026.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.